UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

|  |  |  |
|---|---|---|
| THE UNITED STATES, | ) ) ) | |
| Plaintiff, | ) ) | Court No. 23-00230 |
| v. | ) ) | |
| CHERISH YOUR HEALTH FOOD INC., | ) ) ) | |
| Defendant. | ) ) | |

**<u>ORDER</u>**

On January 25, 2024, the Government filed a motion for the entry of default against defendant Cherish Your Health Food Inc. (Cherish) because it failed to plead or otherwise respond to the complaint filed by plaintiff, the United States.

Also on January 25, 2024, the Clerk of the Court, at the Government's request, entered default against Cherish.

The United States now requests the entry of judgment against Cherish. Pursuant to Rule 55(b) of the Rules of the United States Court of International Trade, it is hereby

ORDERED that judgment is entered in favor of the United States against defendant Cherish Your Health Food Inc., pursuant to 28 U.S.C. § 1582(3), for

(1) unpaid duties pursuant to 19 U.S.C. § 1592(d) and pre-judgment interest pursuant to 19 U.S.C. § 1677g and,

(2) unpaid duty bills and accrued interest pursuant to 19 U.S.C. § 1505,

in the total amount of $477,269.30, plus post-judgment interest.

Dated: May 13, 2024
New York, NY

/s/ Thomas J. Aquilino, Jr.
Judge

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

|  |  |
|---|---|
| THE UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Court No. 23-00230 |
| v. ) | |
| ) | |
| CHERISH YOUR HEALTH ) | |
| FOOD INC., ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

|  |  |
|---|---|
|  | BRIAN M. BOYNTON |
|  | Principal Deputy Assistant Attorney General |
|  | |
|  | PATRICIA M. McCARTHY |
|  | Director |
| Of Counsel: | |
|  | |
| SAMUEL T. BRANDT | FRANKLIN E. WHITE, JR. |
| Senior Attorney | Assistant Director |
| Office of the Associate Chief Counsel | |
|  | |
| SUZANNA HARTZELL-BALLARD | DANIEL BERTONI |
| Senior Attorney | Trial Attorney |
| Office of the Assistant Chief Counsel | Commercial Litigation Branch |
| U.S. Customs and Border Protection | Civil Division |
|  | Department of Justice |
|  | P.O. Box 480 |
|  | Ben Franklin Station |
|  | Washington, DC 20044 |
|  | Tele: (202) 353-7968 |
|  | Daniel.Bertoni@usdoj.gov |
|  | |
| April 2, 2024 | Attorneys for Plaintiff |

## **TABLE OF CONTENTS**

**PAGE**

BACKGROUND ................................................................................................................. 1

    I.    Procedural History ................................................................................... 1

    II.    Factual Background ................................................................................ 2

        A.    Cherish Did Not Pay Duties On The Group A Entries ............................... 2

        B.    Cherish Did Not Pay Duty Bills Issued Regarding The Group B Entries ................................................................................................. 4

ARGUMENT ..................................................................................................................... 6

    I.    Jurisdiction And Standard Of Review ................................................... 6

    II.    The Facts In The Complaint Establish Cherish's Liability .................... 7

        A.    Cherish Is Liable For Unpaid Duties On The Three Group A Entries ....... 7

        B.    Cherish Is Liable For Two Unpaid Duty Bills On The Group B Entries ................................................................................................. 10

CONCLUSION ................................................................................................................ 11

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                 **PAGE(S)**

*Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*,
   699 F.3d 230 (2d Cir. 2012) .................................................................................... 7

*United States v. Ataka Am., Inc.*,
   826 F. Supp. 495 (Ct. Int'l Trade 1993) ................................................................ 10

*United States v. E.G. Plastics, Inc.*,
   494 F. Supp. 3d 1361 (Ct. Int'l Trade 2021) ......................................................... 10

*United States v. Ford Motor Co.*,
   395 F. Supp. 2d 1190 (Ct. Int'l Trade 2005) *aff'd in relevant part, rev'd on other grounds, and remanded*,
   463 F.3d 1267 (Fed. Cir. 2006) ............................................................................... 9

*United States v. Ford Motor Co.*,
   463 F.3d 1267 (Fed. Cir. 2006) .......................................................................... 8, 10

*United States v. Freight Forwarder, Intl., Inc.*,
   44 F. Supp. 3d 1359 (Ct. Int'l Trade 2015) ............................................................. 7

*United States v. Horizon Prods. Int'l Inc.*,
   82 F. Supp. 3d 1350 (Ct. Int'l Trade 2015) ............................................................. 9

*United States v. Int'l Trading Servs.*, LLC,
   222 F. Supp. 3d 1325 (Ct. Int'l Trade 2017) ........................................................... 8

*United States v. Jac Natori Co., Ltd.*,
   108 F.3d 295 (Fed. Cir. 1997) ................................................................................. 7

*United States v. Katana Racing, Inc.*,
   75 F.4th 1346 (Fed. Cir. 2023) ........................................................................... 8, 10

*United States v. NYWL Enterprises Inc.*,
   476 F. Supp. 3d 1394 (Ct. Int'l Trade 2020) ....................................................... 6, 7

*United States v. Optrex Am., Inc.*,
   560 F. Supp. 2d 1326 (Ct. Int'l Trade 2008) ........................................................... 9

*United States v. Scotia Pharms. Ltd.*,
   33 CIT 638 (2009) ................................................................................................... 6

*United States v. Sterling Footwear, Inc.*,
   279 F. Supp. 3d 1113 (Ct. Int'l Trade 2017) ....................................................... 8, 9

**STATUTES**

19 U.S.C. § 1484(a) .................................................................................................................. 9

19 U.S.C. § 1485(a)(3) ............................................................................................................. 8

19 U.S.C. § 1505(d) ............................................................................................................ 6, 11

19 U.S.C. § 1514 .................................................................................................................... 10

19 U.S.C. § 1592(a)(l)(A) ........................................................................................................ 7

19 U.S.C. § 1592(d) ........................................................................................................ passim

19 U.S.C. § 1592(e)(4) ............................................................................................................ 8

19 U.S.C. § 1673b(d)(2) .......................................................................................................... 3

19 U.S.C. § 1673e(a)(3) ....................................................................................................... 3, 4

19 U.S.C. § 1673g(a) ........................................................................................................... 3, 4

19 U.S.C. § 1677g .................................................................................................................... 1

28 U.S.C. § 1582(3) ................................................................................................................. 6

**REGULATIONS**

19 C.F.R. Part 171 .................................................................................................................... 9

19 C.F.R. § 141.1(b)(1) .......................................................................................................... 10

19 C.F.R. § 141.61 ................................................................................................................... 8

**ADMINISTRATIVE DETERMINATIONS**

*Antidumping Duty Order: Fresh Garlic From the People's Republic of China*,
   59 Fed. Reg. 59,209 (Dep't of Commerce Nov. 16, 1994) ................................................. 2

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
   86 Fed. Reg. 511 (Dep't of Commerce Jan. 6, 2021) .......................................................... 4

*Fresh Garlic from the People's Republic of China*,
   86 Fed. Reg. 67,911 (Dep't of Commerce Nov. 30, 2021) .................................................. 5

**OTHER AUTHORITIES**

10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure
   § 2688 (3d ed. 1998) .................................................................................................. 7

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

| | |
|---|---|
| THE UNITED STATES,<br><br>   Plaintiff,<br><br>   v.<br><br>CHERISH YOUR HEALTH<br>FOOD INC.,<br><br>   Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )   Court No. 23-00230 |

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Pursuant to Rule 55(b) of the Rules of the United States Court of International Trade (USCIT R.), plaintiff, the United States, respectfully requests that the Court enter a default judgment against defendant, Cherish Your Health Food Inc. (Cherish).

**BACKGROUND**

This case concerns the collection of unpaid duties and unpaid duty bills on five entries of fresh garlic made by Cherish from the People's Republic of China.

III. Procedural History

On October 30, 2023, we filed the summons (ECF No. 1) and operative amended complaint (ECF No. 4) in this matter. On December 21, 2023, we personally served the summons and amended complaint on Cherish. *See* Proof of Service, ECF No. 5. After Cherish did not serve an answer or other response to the complaint, we requested the entry of default against Cherish on January 25, 2024. *See* Mot. for Entry of Default, ECF No. 6. Default was entered the same day. *See* Entry of Default, ECF No. 7.

IV.   Factual Background

This matter concerns five entries of fresh garlic from China made by Cherish between November 1, 2018, and April 17, 2020.[1]  *See* Exhibit 1, Declaration of Christopher LaTourette, ¶ 5-8; Exhibit 2, Declaration of Bruce Ingalls, ¶¶ 6-8.

All five entries of fresh garlic were subject to an antidumping duty order.  *See Antidumping Duty Order: Fresh Garlic From the People's Republic of China*, 59 Fed. Reg. 59,209 (Dep't of Commerce Nov. 16, 1994) (antidumping duty case number A-570-831).  Exh. 1 ¶ 9, Attachment B; Exh. 2 ¶¶ 11-13.  The antidumping duty order covers all grades of fresh garlic, whether as whole bulbs or separated into cloves.  Exh. 1 ¶ 9, Attachment B.  On June 15, 2018, the Department of Commerce (Commerce) set the antidumping duty cash deposit rate for shipments of fresh garlic from China entered on or after June 15, 2018, at $4.71 per kilogram for exporters not specifically entitled to a separate rate.  Exh. 1 ¶ 10, Attachment C.  Commerce affirmed that this duty rate of $4.71 per kilogram remained in effect as of November 18, 2019.  Exh. 2 ¶ 15, Attachment C.

C.    Cherish Did Not Pay Duties On The Group A Entries

On November 1, 2018, January 23, 2019, and February 12, 2019, Cherish made three entries of fresh whole garlic bulbs from China (the Group A entries), in the respective amounts of 10,986.8 kilograms; 25,368 kilograms; and 25,368 kilograms.  Exh. 1 ¶¶ 6-8, Attachment A. When Cherish made the Group A entries, it categorized them as Type 01 entries (not subject to antidumping duties).  *Id.* ¶ 12.  Cherish omitted the antidumping case number from the entry paperwork it filed with CBP for the Group A entries.  *Id.* ¶ 13, Attachment A.  Cherish also

---

[1] At all relevant times, Cherish was incorporated in the State of New York, with business addresses of 71 Timothy Lane, East Norwich, NY 11732 and 96 Bond Street, Westbury, NY 11590.

2

omitted the antidumping duty rate of $4.71 per kilogram from the entry paperwork it filed with CBP for the Group A entries. *Id.* ¶ 14, Attachment A. Cherish did not pay the required estimated antidumping duty cash deposits at the time of entry for the Group A entries. *Id.* ¶ 15; *see* 19 U.S.C. §§ 1673e(a)(3), 1673g(a) (requiring the deposit of estimated antidumping duties).

On October 2, 2020, CBP informed Cherish that CBP had reason to believe that Cherish had failed to reflect the antidumping case on its imports of merchandise. Exh. 1 ¶ 18, Attachment D. CBP's loss of revenue from the three Group A entries was $304,884.08, representing $290,714.39 in unpaid duties for 61,722.8 kilograms of fresh garlic and $14,169.69 in interest pursuant to 19 U.S.C. § 1677g. *Id.* ¶ 19.

On January 13, 2022, CBP issued to Cherish a demand for payment of the unpaid duties for the three Group A entries, plus interest, pursuant to 19 U.S.C. § 1592(d). Exh. 1 ¶ 20, Attachment E. CBP sent additional demands after Cherish failed to pay within the time provided and sent a final demand to Cherish on December 1, 2022, for payment in the amount of $304,884.08. *Id.* ¶ 21, Attachment F.

Although Cherish has not paid any amount toward the demand for duties associated with the three Group A entries, Cherish's surety, Pennsylvania National Mutual Casualty Insurance Company (Penn Mutual), later paid a portion of the duty demand. Exh. 1 ¶ 22. After CBP issued a demand for payment, Penn Mutual paid $50,000 to satisfy its obligation under the surety bond for the three Group A entries. *Id.* ¶ 23, Attachment G.

Following Penn Mutual's payment, the United States remains deprived of lawful duties in regard to the three Group A entries in the amount of $254,884.08, plus post-judgment interest. Exh. 1 ¶ 24.

D.    Cherish Did Not Pay Duty Bills Issued Regarding The Group B Entries

Cherish made two further entries of fresh garlic from China (the Group B entries). Exh. 2 ¶¶ 7-13. On January 17, 2020, Cherish imported 25,368 kilograms of fresh whole peeled garlic cloves. *Id.* ¶¶ 7, 12, Attachments A & B. On April 17, 2020, Cherish imported 12,487 kilograms of fresh whole garlic bulbs and 13,100 kilograms of fresh peeled garlic cloves. *Id.* ¶ 8, 13, Attachment B. When Cherish initially filed paperwork for the Group B entries, Cherish classified them as Type 01 entries (not subject to antidumping duties) and did not reference the antidumping case number A-570-831 or the applicable antidumping duty rate of $4.71 per kilogram. *Id.* ¶ 9.

CBP rejected the Group B entries because they omitted the antidumping case number and cash deposit rate. Exh. 2 ¶ 10. Cherish refiled the Group B entries as Type 03 entries (subject to antidumping duties) and included the antidumping duty case number A-570-831 and the antidumping duty rate of $4.71 per kilogram on the entry paperwork. *Id.* ¶¶ 11-13, Attachments A & B.

Cherish did not make the requisite cash deposits for the antidumping duties at the rate of $4.71 per kilogram at the time of entry of the Group B entries. Exh. 2 ¶ 16; *see* 19 U.S.C. §§ 1673e(a)(3), 1673g(a) (requiring the deposit of estimated antidumping duties). On January 4, 2022, Commerce issued liquidation instructions to CBP that applied to the merchandise in the Group B entries and stated that the entries should be liquidated at the deposit rate required at the time of entry, that is, $4.71 per kilogram of fresh garlic.[2] *Id.* ¶¶ 17-19, Attachment D. CBP

---

[2] On January 6, 2021, Commerce initiated its administrative review of antidumping duty order A-570-831 for the period of review from November 1, 2019 through October 31, 2020 with respect to various manufacturers/exporters, including Hengshui Chaoran International Trade, the manufacturer/exporter that Cherish used for the Group B entries. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 511, 517 (Dep't of

timely liquidated the two Group B entries on February 18, 2022, in accordance with Commerce's instructions. *Id.* ¶ 19. Entry number U79-1724062-5, containing 25,368 kilograms of garlic, was liquidated for $119,483.28. *Id.* Entry number U79-1725015-1, containing 12,487 kilograms of fresh whole garlic bulbs and 13,100 kilograms of fresh peeled garlic cloves, was liquidated for $120,514.77. *Id.*

On February 18, 2022, CBP issued two duty bills to Cherish for the Group B entries: duty bill number 60029856 for entry number U79-1724062-5 in the principal amount of $119,483.28 and duty bill number 60029846 for entry number U79-1725015-1 in the principal amount of $120,514.77. Exh. 2 ¶ 20, Attachment F. The total principal amount of the duty bills CBP initially issued to Cherish with respect to the two Group B entries was $239,998.05. *Id.* ¶ 21, Attachment F. Delinquency interest has accrued and continues to accrue on the duty bills pursuant to 19 U.S.C. § 1505(d). CBP has continued to mail duty bills to Cherish approximately every 30 days, reflecting the delinquency interest that has accrued. *Id.* ¶ 22.

Although Cherish has not paid any amount toward the duty bills issued for the two Group B entries, Cherish's surety, Penn Mutual, later paid a portion of the duty demand. Exh. 2 ¶¶ 23-25. After CBP issued a demand for payment, Penn Mutual paid $50,000 to CBP to satisfy its obligation under the surety bond for the two Group B entries. *Id.* ¶ 24, Attachment G. From Penn Mutual's payment, CBP applied $11,305.02 to the delinquency interest and $38,694.98 to

---

Commerce Jan. 6, 2021). As a result, the liquidation timeframe for the Group B entries was suspended. *See* 19 U.S.C. § 1673b(d)(2). On November 30, 2021, Commerce rescinded its administrative review with respect to certain manufacturers/exporters, including Hengshui Chaoran International Trade, and stated that antidumping duties should be assessed at rates equal to the cash deposit of estimated antidumping duties required at time of entry for these manufacturers/exporters, that is, $4.71 per kilogram. *Fresh Garlic from the People's Republic of China*, 86 Fed. Reg. 67,911, 67,912 (Dep't of Commerce Nov. 30, 2021).

5

the principal balance of duty bill number 60029846, rendering the outstanding principal balance on this bill $81,819.79 as of the application of Penn Mutual's payment. *Id.* ¶ 25, Attachment H.

No protest was filed regarding the liquidation of the Group B entries. Exh. 2 ¶ 26, Attachment I. Following Penn Mutual's payment, the United States remains deprived of lawful duties and fees in regard to the Group B entries in the principal amount of $201,303.07, plus interest. *Id.* ¶¶ 24-25, 28, Attachments H & J. As of March 9, 2024, Cherish's debt for the Group B entries stands at $220,931.89, that is, a principal balance of $201,303.07 plus $19,682.82 in interest pursuant to 19 U.S.C. § 1505(d). *Id.* ¶ 28, Attachment J. The bills also reflect that if Cherish does not pay by April 7, 2024, the amount owed would increase to $222,385.22, due to additional accrued interest. *Id.*

## ARGUMENT

V.      Jurisdiction And Standard Of Review

The Court possesses exclusive jurisdiction to decide this collection action pursuant to 28 U.S.C. § 1582(3).

In a motion for a default judgment, the movant must first demonstrate to the Clerk of the Court by affidavit or otherwise that the opposing party has failed to plead or otherwise defend. USCIT R. 55(a). Upon such a showing, the Clerk must enter default. *Id*. After default is entered, if the "plaintiff's claim is for a sum certain or for a sum that can be made certain by computation, the court — on the plaintiff's request with an affidavit showing the amount due — must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing. . . ." USCIT R. 55(b).

When considering a motion for entry of default judgment, the Court accepts as true all well-pleaded facts in the complaint, but must reach its own legal conclusions. *See United States*

*v. NYWL Enterprises Inc.*, 476 F. Supp. 3d 1394, 1397-98 (Ct. Int'l Trade 2020). After the entry of default, the Court must determine whether the allegations in a complaint amount to a cause of action, because "a party in default does not admit mere conclusions of law." *United States v. Scotia Pharms. Ltd.*, 33 CIT 638, 642 (2009) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)).

In determining whether to grant a motion for default judgment, the Court may look outside the complaint whenever it needs to "determine the amount of damages or other relief . . . establish the truth of an allegation by evidence; or . . . investigate any other matter." USCIT R. 55(b). Although this rule "permits the [trial] court to conduct a hearing to determine damages, such a hearing is not mandatory." *United States v. Freight Forwarder, Intl., Inc.*, 44 F. Supp. 3d 1359, 1362 (Ct. Int'l Trade 2015) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)).

VI.    <u>The Facts In The Complaint Establish Cherish's Liability</u>

The allegations in our complaint, supported by evidence presented in the declarations appended as exhibits to this motion, establish Cherish's liability for unpaid duties for the three entries of fresh garlic from China designated as the Group A entries and for unpaid duty bills for the two entries of fresh garlic from China designated as the Group B entries.

    E.    <u>Cherish Is Liable For Unpaid Duties On The Three Group A Entries</u>

It is unlawful for any person to enter any merchandise into the United States by means of any document, electronically transmitted data, written or oral statement, or act by means of false and material information or a material omission due to negligence, gross negligence, or fraud. 19 U.S.C. § 1592(a)(l)(A); *United States v. Jac Natori Co., Ltd.*, 108 F.3d 295, 298 (Fed. Cir. 1997). Although subsection (b) of section 1592 provides procedures for CBP to assess penalties

7

related to unlawful entry of merchandise, subsection (d) permits an action to recover lawful duties that were not paid as a result of negligence, gross negligence, or fraud, even if the procedures specified in subsection (b) are not followed. *United States v. Katana Racing, Inc.*, 75 F.4th 1346, 1354 (Fed. Cir. 2023).

Section 1592 establishes three culpability levels: fraud, gross negligence, and negligence. As relevant here, negligence is established by (1) a materially false statement or material omission in connection with the entry, introduction, or attempt to enter or introduce, merchandise into the commerce of the United States; and (2) a failure by the defendant to demonstrate that it exercised reasonable care under the circumstances. *See* 19 U.S.C. § 1592(e)(4); *United States v. Ford Motor Co.*, 463 F.3d 1267, 1279 (Fed. Cir. 2006); *United States v. Int'l Trading Servs., LLC*, 222 F. Supp. 3d 1325, 1331 (Ct. Int'l Trade 2017).

Cherish's actions and inactions regarding the Group A entries were negligent, meeting both elements of materiality and lack of reasonable care. Importers of record are required to declare under oath on each entry that "all other statements in the invoice or other documents filed with the entry, or the entry itself, are true and correct." 19 U.S.C. § 1485(a)(3). An importer of record must make and complete entry by submitting to CBP, among other things, entry documents that include the unique identifying number assigned by the Department of Commerce for any merchandise subject to an antidumping or countervailing duty order. *See* 19 C.F.R. § 141.61. Cherish's failure to file accurate entry paperwork constitutes negligence.

First, the misstatements on the entry paperwork for the Group A entries materially impacted CBP's ability to collect cash deposits. Exh. 1 ¶ 12-15, Attachment A. A false statement is material when it has the "potential to alter [CBP's] appraisement or liability for duty." *United States v. Sterling Footwear, Inc.*, 279 F. Supp. 3d 1113, 1137 (Ct. Int'l Trade

2017) (quoting *United States v. Horizon Prods. Int'l Inc.*, 82 F. Supp. 3d 1350, 1356 (Ct. Int'l Trade 2015)); 19 C.F.R. Part 171, App'x B(B).  Cherish's miscategorization of the Group A entries as Type 01 rather than Type 03, Exh. 1 ¶ 12, omission of the antidumping case number, *id.* ¶ 13, and omission of the antidumping duty rate of $4.71 per kilogram, *id.* ¶ 14, resulted in Cherish's not making the cash deposits at the time of entry, *id.* ¶ 15.  Therefore, these misstatements on the Group A entry paperwork were material because they affected Cherish's liability for duty.  *See Sterling Footwear*, 279 F. Supp. 3d at 1137.

Second, Cherish cannot show that its behavior regarding the Group A entries represents the behavior of "a reasonable person acting with reasonable care."  *See United States v. Ford Motor Co.*, 395 F. Supp. 2d 1190, 1215 (Ct. Int'l Trade 2005), *aff'd in relevant part, rev'd on other grounds, and remanded*, 463 F.3d 1267 (Fed. Cir. 2006).  In order to meet this burden, Cherish would have to present the Court "with evidence that it provided Customs with true and accurate information."  *Id*. at 1210.  The Antidumping Duty Order was issued in 1994 and is publicly available.  Exh. 1 ¶ 9, Attachment B.  Since the burden to ensure the accuracy of entry forms lies with the importer, a failure to ensure that a form contains truthful information falls below the standard of reasonable care.  *Ford Motor*, 395 F. Supp. 2d at 1209-1210.  Therefore, Cherish is responsible for the misstatements on the Group A entry paperwork, which, because of their falsity, fall beneath the standard of reasonable care.  *See* Exh. 1 ¶¶ 12-14, Attachment A.

Further, any mistake made by Cherish's customs broker as whether the merchandise in the Group A entries was subject to an antidumping duty order cannot absolve Cherish of responsibility for properly designating its merchandise in the Group A entries as subject to an antidumping duty.  *See* 19 U.S.C. § 1484(a); *United States v. Optrex Am., Inc.*, 560 F. Supp. 2d 1326, 1339 (Ct. Int'l Trade 2008) ("The court rejects Optrex's attempt to shift responsibility for

classification to its customs broker, as it is well settled that the *importer* bears responsibility for classification of its merchandise.").

Because Cherish's misstatements concerning the Group A entries were materially false and fell below the standard of reasonable care, Cherish is liable at the level of negligence. *See Ford Motor*, 463 F.3d at 1279. And as a result of its negligence concerning the Group A entries, Cherish owes unpaid duties pursuant to 19 U.S.C. § 1592(d). *See Katana Racing*, 75 F.4th at 1354; Exh. 1 ¶ 24. Therefore, the Court should grant judgment against Cherish in the amount of $254,884,08, plus post-judgment interest, regarding the Group A entries.

F.  Cherish Is Liable For Two Unpaid Duty Bills On The Group B Entries

CBP's liquidations of entries are final and conclusive as a matter of law if no protest is timely filed. 19 U.S.C. § 1514. An importer of record is liable for unpaid duty bills. *See* 19 C.F.R. § 141.1(b)(1); *United States v. Ataka Am., Inc.*, 826 F. Supp. 495, 498 (Ct. Int'l Trade 1993) ("It is a longstanding principle that customs duties are a personal debt upon the importer that derives from a statutory . . . obligation). There is no statute of limitations governing an importer's liability for the duties assessed on entered merchandise. *Ataka*, 826 F. Supp. at 497-98; *United States v. E.G. Plastics, Inc.*, 494 F. Supp. 3d 1361, 1363 (Ct. Int'l Trade 2021). Further, unpaid duty bills accumulate delinquency interest pursuant to 19 U.S.C. § 1505(d). *See E.G. Plastics*, 494 F. Supp. 3d at 1363-64.

Because of the finality of CBP's liquidations, *see* 19 U.S.C. § 1514, Cherish's liability for the unpaid duty bills for the two Group B entries is straightforward. In accordance with the liquidations of the entries, CBP issued two duty bills to Cherish regarding the Group B entries. Exh. 2 ¶¶ 20-21. Cherish was importer of record for the Group B entries, Exh. 2 ¶¶ 7-8, Attachments A & B, but has not made any payment toward resolving these duty bills, *id.* ¶ 27.

Cherish has not filed a protest concerning the Group B entries. *Id.* ¶ 26, Attachment I. After the payment by Penn Mutual, the balance owed on these two bills stands at $220,931.89, which includes unpaid duties and delinquency interest pursuant to 19 U.S.C. § 1505(d) that continues to accrue. *Id.* ¶ 28, Attachment J. After April 7, 2024, the amount owed will increase to $222,385.22. *Id.* Therefore, regarding the unpaid duty bills for the Group B entries, the Court should grant judgment against Cherish in the amount of $220,931.89, if judgment is entered on or before April 7, 2024, or $222,385.22, if judgment is entered after April 7, 2024, plus post-judgment interest.

## CONCLUSION

For these reasons, we respectfully request that Court enter a default judgment against Cherish in the total amount of $475,815.97, if judgment is entered on or before April 7, 2024, or in the total amount of $477,269.30 if judgment is entered after April 7, 2024, plus post-judgment interest.

> Respectfully Submitted,
>
> BRIAN M. BOYNTON
> Principal Deputy Assistant Attorney General
>
> PATRICIA M. McCARTHY
> Director

Of Counsel:

SAMUEL T. BRANDT
Senior Attorney
Office of the Associate Chief Counsel

SUZANNA HARTZELL-BALLARD
Senior Attorney
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

April 2, 2024

 /s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

 /s/ Daniel Bertoni
DANIEL BERTONI
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tele: (202) 353-7968
Daniel.Bertoni@usdoj.gov

Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 2nd day of April, 2024, I caused to be placed in the United States mail (first-class, postage prepaid), copies of "PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT" addressed as follows:

> Cherish Your Health Food Inc.
> 71 Timothy Lane
> East Norwich, NY 11732

                               s/ Daniel Bertoni